IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                           CR No. 00-411 JC

SANTO ARRIETA,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Defendant's *Motion to Dismiss: Lack of Jurisdiction Pursuant to 18 U.S.C. § 1151(b)*, filed February 25, 2003 (*Doc. 27*). Having reviewed the motion, memoranda and all relevant authorities, the Court being fully advised finds the motion not well-taken, and it is therefore denied.

**I.**     **Background**

Unlike the jurisdictional quagmire that this case potentially poses, the facts are straightforward. On April 5, 2000, a Grand Jury indicted Defendant Santo Arrieta, a non-Indian, on two charges: Crime on an Indian Reservation: Assault Resulting in Serious Bodily Injury, in violation of 18 U.S.C. §§ 1152 and 111(a)(6); and the Use of a Firearm During the Commission of a Crime of Violence, in violation of 18 U.S.C. § 924(c). The alleged incident against an enrolled member of the Tesuque Pueblo occurred on Santa Fe County Road (SFCR) 105, also referred to as Shady Lane or Bouquet Lane. The road is located within the exterior boundaries of the Pojoaque Pueblo in New Mexico.

**II.      Discussion**

The issue before the Court is whether it has subject matter jurisdiction to try Defendant under the Indictment. Critical to the issue is whether the situs of the alleged offense, involving SFCR 105, which lies within the exterior boundaries of Pojoaque Pueblo, is "Indian country" within the meaning of 18 U.S.C. § 1151. The determination of whether lands are "Indian country" is "the benchmark for approaching the allocation of federal, tribal, and state authority with respect to Indians and Indian lands." *Narragansett Indian Tribe v. Narragansett Elec. Co.,* 89 F.3d 908, 915 (1st Cir. 1996). Generally, "Indian country" refers to a geographical area in which tribal and federal jurisdiction is exclusive. *Oneida Indian Nation of New York v. Sherrill*, 337 F.3d 139, 153 (2nd Cir. 2003) *petition for cert. filed,* 72 U.S.L.W. 421 (U.S. Dec.11, 2003) (No. 03-855). Within § 1151, Congress included three types of land under the definition of "Indian country." Specifically,

> the term "Indian country"... means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

§ 1151. As Defendant's motion makes clear, sections (a) and (c) are not at issue.[1] Instead, Defendant requests this Court to make the determination that SFCR 105 itself is not a dependent Indian community. Yet, this request has no sound basis in law or in fact.

---

[1] "The question is whether Shady Lane (SFCR 105) is a "dependent Indian community." *Reply to Government's and Amicus'* [sic] *Response to Motion to Dismiss: Lack of Jurisdiction Pursuant to U.S.C. § 1151(b)* (Reply), filed Dec. 15, 2003, at 3 (*Doc. 47*).

Initially, there is no question that Pojoaque Pueblo is a dependent Indian community. Upon moving to the Rio Grande Valley in the 16th century, Spaniards deemed the Indians or the Indian communities as "Indios Naturales" or "Indios de los Pueblos." Felix S. Cohen, Handbook of Federal Indian Law, at 383 (1986 ed.). Pojoaque Pueblo was one of the Indian pueblos recognized by Spain. Mexico and later the United States, in the Treaty of Guadalupe Hildalgo of 1848, also recognized the New Mexico pueblos, including Pojoaque. *Id*. at 384-85. Many years later in the seminal case, *United States v. Sandoval*, 231 U.S. 28, 48 (1913), the Court held that the Federal Government had jurisdiction to proscribe the introduction of intoxicating liquors on pueblo lands. The Court reasoned that due to issues later termed "federal set-aside" and "federal superintendence," Congress could exercise jurisdiction over pueblo lands under its "general power over 'all dependent Indian communities within its borders, whether within its original territory or territory subsequently acquired, and whether within or without the limits of a State.'" *Id.* at 46. This holding firmly established federal control over New Mexico pueblos. *Alaska v. Native Village of Venetie Tribal Government*, 522 U.S. 520, 528 (1998). In 1948, when Congress passed § 1151, it adopted almost verbatim *Sandoval's* language regarding dependent Indian communities. *Id.* at 530. Congress' adoption of the language in *Sandoval* indicates its intention to identify New Mexico pueblos as dependent Indian communities. *New Mexico v. Romero*, ---P.3d---, 2004 WL 252086.

Defendant does not contest Pojoaque Pueblo's status as a dependent Indian community. Instead, he argues that SFCR 105 itself is not a dependent Indian community. *Reply*, at 3. Defendant analyzes the issue under the two-part test for dependent Indian communities set out in *Venetie*. *Venetie*, 522 U.S. at 527. The test includes whether the lands "have been set aside by the Federal Government for the use of the Indians as Indian land; second they must be under federal

superintendence." *Id.*; *HRI, Inc., v. Environmental Protection Agency*, 198 F.3d 1224, 1250 (10th Cir. 2000). This test, however, is inapplicable to the issue of whether a roadway within the exterior boundaries of a pueblo is no longer "Indian country." *See* 18 U.S.C. § 1151(b) (Indian country is defined as "all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a State."); *see also Venetie*, 522 U.S. at 528.

The proper question and thus the potential jurisdictional quagmire is whether federal jurisdiction is destroyed when the title to lands within the exterior boundaries is extinguished from the authority and control of the United States and the Pueblo. The right to extinguish title to Indian lands rests exclusively with Congress. 25 U.S.C. § 177; *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 667-68 (1974); *Blatchford v. Gonzales*, 100 N.M. 333, 336 (1984). "[E]xtinguishment of [Indian title] cannot be lightly implied in view of the avowed solicitude of the Federal Government for the welfare of its Indian wards." *United States v. Santa Fe Pacific R. Co.,* 314 U.S. 339, 354 (1941). The Government seems to concede that extinguishment does destroy federal jurisdiction. "The pueblos of New Mexico are prototypical dependent Indian communities, and all unextinguished pueblo owned lands within the exterior boundaries of the pueblos are therefore 'Indian country' for purposes of establishing federal criminal jurisdiction." *United States' Brief in Response to Defendant's Motion to Dismiss for Lack of Jurisdiction Pursuant to 18 U.S.C. § 1151(b)* (U.S.'s Response), filed Aug. 11, 2003, at 3 (*Doc. 29*). Amici Curiae vehemently oppose the theory that extinguishment of title to lands within the exterior boundaries of a pueblo destroys federal jurisdiction over those lands. "The relevant and dispositive inquiry is whether Pueblo grants *remain* "Indian country" despite Congress' sanctioning certain non-Indian settlement within those grants, through

-4-

the vehicle of the Pueblo Lands Act." *Brief of Amici Curiae in Opposition to Defendant's Motion to Dismiss*, filed Oct. 31, 2003, at 3 (*Doc. 40*) (emphasis in original).

The Court need not decide whether extinguishment destroys the designation of "Indian country" in terms of jurisdictional status, as Defendant fails to cite any authority that Congress extinguished Pueblo title to SFCR 105.[2] In fact, both parties submitted a joint supplemental exhibit in which a title company reviewed the plat of a survey of the area surrounding SFCR 105 and determined that the road itself had not been extinguished, even though the lands surrounding it had been so extinguished. *Joint Supplemental Exhibits on Defendant's Motion to Dismiss,* ex. E. The Government also submitted various exhibits supporting its contention that Pueblo title to the land beneath SFCR 105 has never been extinguished. *U.S.'s Response*, ex. 7, affidavit of T. Parker Sando, Realty Specialist ("Title to the land underlying [SFCR 105] remains with the Pueblo of Pojoaque even though the land is burdened by this road and is bordered on both sides by non-Indian owned lands."); *see also id.,* ex 1 (letter from Bureau of Indian Affairs stating that SFCR 105 is recognized as Tribal land). The Court finds that Congress has not extinguished Pojoaque Pueblo's title to SFCR 105, and thus federal jurisdiction has not been destroyed.

### *Defendant cannot define SFCR 105 as a Right-of-Way*

Defendant attempts to define SFCR 105 as a right-of-way. He argues that due to Congress' omission in § 1151(b) of language concerning rights-of-way, Congress exempted such rights-of-way

---

[2]Due to the long held policy by the Federal Government to protect Indian lands, once an Indian pueblo makes out a prima facie case of prior possession or title to the property in dispute, the burden of proof falls upon the non-Indian party to demonstrate otherwise. *Wilson v. Omaha Indian Tribe*, 442 U.S. 653, 668-69 (1979) (citing 25 U.S.C. § 194).

from Indian country status when located within dependent Indian communities.[3] The Court need not decide this issue. Rights-of-ways across Indian lands may only be granted by, or with the approval of, Congress. 25 U.S.C. §§ 323-328 (Secretary of the Interior and the Indian owner must approve rights-of-ways across lands held in trust for Indian tribes, communities, bands or nations, or lands owned by individual Indians, tribes, bands or communities that are subject to restriction against alienation). Defendant has not presented the Court with any evidence that Congress and the Pojoaque Pueblo have granted a right-of-way through what is known as SFCR 105.

## III. Conclusion

Due to Defendant's failure to present evidence that Congress extinguished Pojoaque Pueblo's title to SFCR 105, this Court need not address the muddy morass of whether such extinguishment destroys the land's status as "Indian country." The Court also need not address the issue of whether Congress intended rights-of-way to be included in § 1151(b), as Defendant once again, fails to present evidence that Congress and Pojoaque granted a right-of-way.

Wherefore,

IT IS ORDERED that Defendant's *Motion to Dismiss: Lack of Jurisdiction Pursuant to 18 U.S.C. § 1151(b)*, filed February 25, 2003 (*Doc. 27*) is DENIED.

DATED April 1, 2004.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[3] Defendant bases his theory on the argument that due to Congress' inclusion of rights-of-way in sections (a) and (c) of § 1151, such omission in section (b) must indicate Congress' intent to exclude rights-of-way from dependent Indian communities.

Attorneys for United States:

>Charles L. Barth, AUSA
>Fred Chris Smith, AUSA
>United States Attorney's Office
>Albuquerque, New Mexico

Attorney for Defendant:

>Douglas E. Couleur, Esq.
>Santa Fe, New Mexico